**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LAFAYETTE DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>FAITH OF LIFE PROTECTION SERVICES, INC., *et al.*,<br><br>Defendants. | ) | Civil Action No. 25-1779 (ABJ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lafayette Davis brought this action against Faith of Life Protective Services, Inc. ("Faith of Life"); Bryan Somerville; James Antonion McCoy; Safeway, Inc. ("Safeway"); and Single Source Security, Inc. d/b/a/ Protos Security ("Protos"). Second Am. 2d Am. Compl. [Dkt # 9] ("2d Am. Compl."). Plaintiff alleges that on July 29, 2024, defendants Somerville and McCoy, in their capacity as Safeway security guards, jumped on him and threw him to the ground, causing him to break his leg. 2d Am. Compl. ¶¶ 12, 15. Plaintiff seeks compensatory and punitive damages in the amount of $4 million. Ad Damnum Clause, 2d Am. Compl. at 10–11.

Pending before the Court are motions to dismiss filed by Safeway and Protos. *See* Def. Safeway's Mot. to Dismiss [Dkt. # 11-1] ("Safeway's Mot."); Def. Protos's Mot. to Dismiss [Dkt. # 22-1] ("Protos's Mot."). Plaintiff has opposed the motions, and the matter is fully briefed.[1]

1 Pl.'s Opp. to Def. Safeway's Mot. to Dismiss [Dkt. # 21] ("Pl.'s Opp. to Safeway's Mot."); Def. Safeway's Reply in Supp. of Mot. to Dismiss [Dkt. # 27] ("Safeway's Reply"); Pl.'s Opp. to Def. Protos's Mot. to Dismiss [Dkt. # 28] ("Pl.'s Opp. to Protos's Mot."); Def. Protos's Reply in Supp. of Mot. to Dismiss [Dkt. # 30] ("Protos's Reply").

For the reasons stated below, the motions are **GRANTED IN PART** and **DENIED IN PART.** The battery, false imprisonment, and false arrest claims against Safeway and Protos will move forward, and the section 1983, malicious prosecution, negligent hiring and supervision, and premises liability claims will be dismissed. Defendant Faith of Life has answered the complaint, so the claims against it remain pending. Defendant McCoy was served on January 1, 2026, but has not yet responded to the complaint. *See* Return of Service [Dkt. # 36]. Defendant Somerville has not yet been served.

**BACKGROUND**

According to the second amended complaint, plaintiff was a regular customer at the Safeway store located at 415 14th Street SE in Washington, D.C. 2d Am. Compl. ¶ 11. Defendant Safeway contracted with defendant Protos to provide professional security guards. 2d Am. Compl. ¶ 8. Protos, in turn, subcontracted with defendant Faith of Life to staff the positions. 2d Am. Compl. ¶ 9. Faith of Life employed defendants Somerville and McCoy as professional security guards and assigned them to the store. 2d Am. Compl. ¶ 10.

On the morning of July 29, 2024, after making a purchase at the store, plaintiff exited the store through an open automatic entrance door. 2d Am. Compl. ¶ 12. He was approached by defendant Somerville, who informed him that he would be barred from the store for five years as a sanction for that conduct. 2d Am. Compl. ¶ 12. Defendant Somerville ordered plaintiff to leave the premises, and plaintiff complied. 2d Am. Compl. ¶ 12. Somerville did not provide him with any formal barring order or paperwork. 2d Am. Compl. ¶ 12.

Later that evening, plaintiff returned to the 14th Street Safeway to speak with the manager about the earlier incident. 2d Am. Compl. ¶¶ 14–15. As the conversation was ending, defendants Somerville and McCoy approached plaintiff, reminded him that he had been barred from the

premises, and ordered him to leave. 2d Am. Compl. ¶ 15. Plaintiff alleges that as he complied with the order and started towards the exit, defendants Somerville and McCoy jumped on him and threw him to the ground, breaking his leg. 2d Am. Compl. ¶ 15.

Plaintiff was then handcuffed and held to the ground until the ambulance arrived. 2d Am. Compl. ¶ 16. He was transported to the hospital and diagnosed with a right proximal femoral shaft fracture. 2d Am. Compl. ¶ 18. Plaintiff further contends that defendants Somerville and McCoy contacted the Metropolitan Police Department and made a "false and malicious report[]" that plaintiff had committed crimes of unlawful entry and resisting arrest. 2d Am. Compl. ¶ 17. As a result, during his week-long stay at the hospital, plaintiff was handcuffed to a hospital bed, where he remained under police supervision. 2d Am. Compl. ¶ 19. According to plaintiff, upon his discharge from the hospital, he was cited for unlawful entry and resisting arrest; however, the day he appeared before the Superior Court for presentment, the charges were dismissed. 2d Am. Compl. ¶¶ 20–21.

The second amended complaint consists of nine causes of action:

> Count I – 42 U.S.C. § 1983 claim under the Fourth Amendment alleging excessive force against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 22–27;
>
> Count II – 42 U.S.C. § 1983 claim under the Fourth Amendment alleging unlawful detention, arrest, and charge against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 28–30;
>
> Count III – common law battery claim against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 31–35;
>
> Count IV – common law false arrest claim against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 36–39;
>
> Count V – common law malicious prosecution claim against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 40–43;

> Count VI – common law false imprisonment claim against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 44–47;
>
> Count VII – common law intentional infliction of emotional distress claim against defendants Safeway, Protos, Faith of Life, Somerville, and McCoy, 2d Am. Compl. ¶¶ 48–51;
>
> Count VIII – negligent hiring claim against defendants Safeway, Protos, and Faith of Life, 2d Am. Compl. ¶¶ 52–56;
>
> Count IX – negligence claim against defendant Safeway under a theory of premises liability, 2d Am. Compl. ¶¶ 57–60.

In all but Counts VIII and IX, plaintiff sues defendants Safeway, Protos, and Faith of Life under the theory of vicarious liability, or *respondeat superior*. 2d Am. Compl. ¶¶ 24, 27, 30, 34–35, 38–39, 42–43, 46–47, 50–51.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a

"formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I. Counts I and II will be dismissed because, under section 1983, private entities are not liable under a *respondeat superior* theory.

Plaintiff alleges that defendants Somerville and McCoy were licensed special police officers acting under the color of law at the time of his arrest, and he has brought two claims against the individual officers and Safeway, Protos, and Faith of Life for violation of his constitutional rights under 42 U.S.C. § 1983. 2d Am. Compl. ¶¶ 23, 25, 28–29. Safeway and Protos have moved to dismiss those claims against them, and the Court finds that plaintiff has failed to allege facts to support imposing liability on the part of those organizations.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.

Ordinarily in a section 1983 claim, the defendant is the employing governmental entity, and here, plaintiff seeks to invoke the principles that would make a municipality liable for the acts of its officers and apply them to these circumstances. There is support for this as a matter of law; private companies and their employees can also act under color of state law and can be sued under the statute. *See, e.g.*, *Wyatt v. Cole*, 504 U.S. 158, 161–62 (1992). But the plaintiff must still satisfy the legal requirements for such an action, and that is where the second amended complaint falls short.

As the Supreme Court stated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." When a plaintiff seeks to hold a municipality liable under section 1983, the municipality must have acted in accordance with a "government[] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that "caused a constitutional" violation and that "inflicts the injury." *Monell*, 436 U.S. at 691, 694.

In the years after *Monell,* the Supreme Court has reaffirmed this holding. "[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others.*" *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479

(1986) (emphasis in original), citing *Monell*, 436 U.S. at 665–83. "The 'official policy' requirement of *Monell* was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* This requirement flows directly from the statute itself. And, while the D.C. Circuit has not directly addressed circumstances where, as here, a private actor employs quasi-state actors, every Circuit court that has addressed the issue has held that *Monell*'s limitation on *respondeat superior* liability applies in those circumstances.[2] Indeed, plaintiff concedes as much. *See* Pl.'s Opp. to Safeway's Mot. at 3 ("Defendant Safeway is correct when it points ou[t] that the majority of [Circuit courts] have applied the principles of *Monell* to private institutions whose employee act[s] under color of state law.").[3]

The second amended complaint is quite clear about its theory of liability against Safeway and Protos. Count I alleges:

> 2d Am. Compl. ¶ 24: Defendants Somerville and McCoy were employed by Safeway, Protos, and [Faith] of Life, and were acting within the scope of their employment at the time of the incident.

---

2 *Lyons v. Nat'l Car Rental Sys., Inc.*, 30 F.3d 240, 246 (1st Cir. 1994); *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408–09 (2d Cir. 1990); *Defreitas v. Montgomery Cnty. Corr. Facility*, 525 Fed. Appx. 170, 176 (3d Cir. 2013); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996); *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014); *Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012); *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 723 (10th Cir. 1988); *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

3 Plaintiff points to cases in which courts have raised questions about the logic of applying the doctrine to a private employer or come to a different conclusion, and he notes that he "wishes to preserve his argument that Safeway is liable under a theory of *respondeat superior* for the conduct of McCoy and Somerville." Pl.'s Opp. to Safeway's Mot. at 4. The record reflects that the argument has not been waived, and the facts related to whether there was an agency relationship between Safeway and the security guards will be fleshed out in connection with Count III.

> 2d Am. Compl. ¶ 25: The actions of Somerville and McCoy constituted the use of excessive, unnecessary, and unreasonable force in violation of the Fourth Amendment to the Constitution of the United States.
>
> 2d Am. Compl. ¶ 26: Safeway, Protos, and Faith of Life were aware that Somerville and McCoy had police authority and were authorized to act under color of law to make arrests, use force, and perform traditional police duties. As a result, defendants Safeway, Protos, and [Faith] of Life are liable for the conduct of defendant Somerville and McCoy under 42 U.S.C. § 1983.

Count II alleges no additional facts other than that Somerville and McCoy also unlawfully detained the plaintiff and subjected him to an arrest and charge without probable cause in violation of the Fourth Amendment to the Constitution. 2d Am. Compl. ¶ 28. Therefore, the Court finds that the second amended complaint fails to state a claim against Safeway and Protos under section 1983.

Plaintiff argues in his opposition to the motion that Safeway and Protos can be found liable anyway because the constitutional violations were "caused by [their] failure to adequately train employees who act under color of law." Pl.'s Opp. to Safeway's Mot. at 4; Pl.'s Opp. to Protos's Mot. at 5. To establish municipal liability after *Monell*, a plaintiff must demonstrate a "direct causal link between a [] policy or custom and the alleged constitutional violation," and the inadequacy of training may serve as the basis for section 1983 liability where the failure to train amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 385, 388 (1989); *see also Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (liability under *Monell* may rest on failure to adequately train city employees, so long as the inadequate training "represent[s] 'city policy'" and reflects "deliberate indifference to the rights" of plaintiffs).

In *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), the Court of Appeals explained that a district court assessing a section 1983 claim must ask two questions. First, does the complaint state a claim for a predicate constitutional violation? *Id.* Second, if so,

does the complaint state a "claim that a custom or policy of the municipality caused the violation?" *Id.* To satisfy the first prong of the analysis, all that needs to be established "is some constitutional harm suffered by the plaintiff;" it is not necessary that the municipality's policy makers or employees be implicated. *Id.* That is not a problem here. To meet the second prong, though, the court must determine whether the plaintiff has alleged an "affirmative link" between the municipality's policy and the injury "such that a municipal policy was the 'moving force' behind the constitutional violation." *Id.*, citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) and *Harris*, 489 U.S. at 389.

The *Baker* court explained:

> There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution . . . ; the action of a policy maker within the government . . . ; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom" . . . ; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.

*Id.* at 1306 (internal citations omitted).

The theory that Safeway and Protos showed deliberate indifference to a need for training or supervision did not appear in any form on the face of the second amended complaint, which was plaintiff's third attempt to state grounds for liability, and "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020). Furthermore, there is no reference to a custom or policy in the document.

Plaintiff maintains that the Court can find the factual allegations sufficient to support a claim based on failure to train, or a failure to supervise or discipline officers, if one draws upon

the allegations in Count VIII. Even if the Court takes those into consideration, though, the allegations do not give rise to the necessary inferences, and the second amended complaint does not allege a failure to respond to a need that rises to the level of a custom or policy. To state such a claim, a plaintiff must allege that "the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that policymakers can be said to have been deliberately indifferent to the need." *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998).

Yet Count VIII is nothing more than a recitation of wholly conclusory allegations:

> 2d Am. Compl. ¶ 53: Defendants Safeway, Protos, and [Faith] of Life had a duty to assure that security guards in their employ were qualified to act as security guards, and would conduct themselves in a reasonable manner and in compliance with industry standards when dealing with members of the public.
>
> 2d Am. Compl. ¶ 54: Defendants Safeway, Protos, and [Faith] of Life knew or should have known that defendants Somerville and McCoy were unqualified to act as security guards, and violated the standard of care by hiring them.
>
> 2d Am. Compl. ¶ 55: Defendants Safeway, Protos, and [Faith] of Life also violated the standard of care by failing to properly train, supervise, and discipline defendants Somerville and McCoy.

Even if the Court were to deem those allegations to be part of Counts I or II, they include no facts to support an inference that Safeway or Protos demonstrated deliberate indifference to plaintiff's rights, and they are too conclusory to support a plausible *Monell* claim. *See Iqbal*, 556 U.S. at 678; *see also Fry v. Diamond Const., Inc.*, 659 A.2d 241, 248 (D.C. 1995) ("[A] contractor's negligence in conducting the work it was hired to do creates no presumption that the employer was negligent in selecting the contractor. . . . One incident of poor judgment does not prove incompetence.").

For those reasons, Counts I and II will be dismissed.

## II. Count III will move forward because, at this stage of the litigation, plaintiff has sufficiently alleged battery under a theory of *respondeat superior*.

In Count III, plaintiff has sued Somerville, McCoy, Faith of Life, Protos, and Safeway for battery. Safeway and Protos have moved to dismiss the battery against them on the grounds that they are not vicariously liable for the conduct of independent contractors, and that plaintiff did not adequately allege that they had a principal-agent relationship with Somerville and McCoy. Safeway's Mot. at 9–10; Protos's Mot. at 5.[4] The claim will go forward against Faith of Life, Somerville, and McCoy no matter how this portion of the motion is resolved as to Safeway and Protos.

Principals are liable for the tortious acts of their agents. *Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–66 (1982). Under District of Columbia law, whether a principal-agent relationship exists in a given situation depends on the particular facts of each case, and courts consider five factors when determining whether there is such a relationship: (1) the selection and engagement of the agent, (2) the payment of wages, (3) the power to discharge, (4) the power to control the agent's conduct, (5) and whether the work is part of the regular business

---

4 Safeway further argues that it cannot be held vicariously liable because it was in privity with Protos, and not its subcontractor, Faith of Life. Safeway's Reply at 4. However, the principal-subagent relationship does not eliminate Safeway's liability:

> A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal. The relationships between a subagent and . . . the appointing agent's principal are relationships of agency.

Restatement (Third) of Agency § 3.15(1); *see Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 268–69 (D.D.C. 2014) (applying the subagency principle).

of the employer. *Moorehead v. District of Columbia*, 747 A.2d 138, 143 (D.C. 2000). Of the five factors, the fourth – the power to control the agent's conduct – is "usually" determinative. *Id.*

The two defendants do not contend that plaintiff failed to plead a battery claim. *See* Safeway's Mot. at 10 ("The Second Amended Complaint clearly alleges that [battery] was inflicted upon [plaintiff] . . . by Somerville and McCoy."). They argue only that plaintiff has not alleged facts that address any of the five factors necessary to establish a principal-agent relationship.

The Court acknowledges that plaintiff's allegations of a principal-agent relationship are largely conclusory. However, at this stage of the litigation – and without the benefit of discovery – plaintiff is not in a position to sort out the facts concerning the relationships between the defendants.[5] That information is in the hands of defendants, and neither offered facts that would shed light on the situation. *See* Safeway's Mot. at 9–10; Protos's Mot. at 5. Meanwhile, plaintiff has alleged that the battery took place in the presence of the Safeway manager, and he traced the line of contracts that connects all of the defendants, from Safeway to Somerville and McCoy. Given the requirement that the Court must draw all inferences in favor of the plaintiff, and since the claim is moving forward against Faith of Life, the Court will permit it to go forward against Protos and Safeway for now. Plaintiff should take note, though, that it will be incumbent upon him to prove his allegations at the summary judgment stage.

Accordingly, the motion to dismiss as to Count III is denied.

---

5 The D.C. Court of Appeals has previously found Safeway liable for the torts of its privately contracted security guards. *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856 (D.C. 1982) also involved a privately contracted Safeway security guard that committed various torts against a customer. Safeway argued, in part, that there was insufficient evidence to support the jury's finding that it was vicariously liable. *Id.* at 858. The Court of Appeals acknowledged that determining whether the principal-agent relationship exists "depends upon the particular facts of the case." *Id.* at 860. It held that the trial testimony from Safeway's chief security investigator supported a finding that Safeway exercised sufficient control to establish such a relationship. *Id.* at 861–62.

### III. Counts IV and V will move forward because the allegations do not support a finding that Somerville and McCoy had probable cause.

In Counts IV and V, plaintiff has sued Somerville, McCoy, Faith of Life, Protos, and Safeway for false arrest and malicious prosecution. Defendant Protos has moved to dismiss those claims on the grounds that it is not vicariously liable for the conduct of independent contractors. Protos's Mot. at 5. Safeway and Protos both argue that plaintiff fails to state claims because Somerville and McCoy had probable cause to arrest plaintiff under D.C.'s unlawful entry statute, D.C. Code § 22–3302(b). Safeway's Mot. at 11–13; Protos's Mot. at 7–8.

In the District of Columbia, "[f]alse arrest is indistinguishable as a practical matter from the common law tort of false imprisonment." *Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010) (internal quotation marks and citations omitted). To state a claim for false imprisonment or false arrest, a plaintiff must allege: "(1) detention or restraint against one's will within boundaries fixed by the defendant, and (2) the unlawfulness of such restraint." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911–12 (D.C. Cir. 2015), citing *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007). Generally, a detention's lawfulness depends on whether probable cause supported it. See *Harris*, 776 F.3d at 912 ("The existence of probable cause for arrest defeats claims for false arrest and imprisonment."); *DeWitt v. District of Columbia*, 43 A.3d 291, 295 (D.C. 2012) ("[I]t is a familiar principle that probable cause for an arrest and detention constitutes a valid defense to a claim of false . . . imprisonment."), quoting *Magwood v. Giddings*, 672 A.2d 1083, 1086 (D.C. 1996).

Thus, if a defendant's conduct is supported by probable cause, claims under false arrest and false imprisonment cannot stand. The probable cause test "is based entirely on the objective facts and in this context. The court does not consider 'what a police officer may have actually, even reasonably, perceived the facts to be.'" *Scales v. District of Columbia*, 973 A.2d 722, 729

(D.C. 2009); *see also Munn v. United States*, 283 A.2d 28, 30 (D.C. 1971) (finding that probable cause is an objective standard that turns on whether a reasonable officer, in light of his experience and training, could believe a crime was being committed).

According to the second amended complaint, plaintiff was ordered to leave and was told that he "would be banned" from the premises on the morning of July 29, 2024. 2d Am. Compl. ¶ 12. That afternoon, he returned to the premises to speak with the manager about the ban. 2d Am. Compl. ¶ 15. Safeway and Protos argue that, given those facts, defendants Somerville and McCoy had probable cause to arrest plaintiff for violating D.C.'s unlawful entry statute, D.C. Code § 22–3302(a)(1). Safeway's Mot. at 11–13. That statute provides:

> Any person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor.

D.C. Code § 22–3302(a)(1).

Safeway and Protos rely on the decision of the D.C. Court of Appeals in *Kotsch v. District of Columbia*, 924 A.2d 1040 (D.C. 2007) to argue that Somerville and McCoy had probable cause to believe plaintiff violated the statute. In that case, plaintiff entered a restaurant and, after exchanging words with private security guards, was ordered to leave. *Id.* at 1042. Upon plaintiff's refusal, the guards dragged him out of the restaurant, struck him with a nightstick, and arrested him. *Id.* Plaintiff alleged that the defendants had committed various torts, including false arrest and false imprisonment. *Id.* The Court of Appeals held that the officers' conduct was supported by probable cause, because it was undisputed that the officers ordered the plaintiff to leave the

restaurant, the officers were authorized to do so, and the plaintiff did not leave when he was ordered to do so. *Id.* at 1045.

But the decision in *Kotsch* is inapposite. Here, each time that defendant Somerville ordered plaintiff to leave the premises, he either complied or attempted to comply. 2d Am. Compl. ¶¶ 12, 15; *see Kotsch*, 924 A.2d at 1042; *see also* D.C. Code § 22–3302(b) ("Any person who . . . shall *refuse to quit* [the premises] on the demand of the lawful occupant . . . shall be deemed guilty of a misdemeanor . . . ."). Moreover, in plaintiff's first interaction with Somerville, he was told that he "would be" banned from entering the store for five years. 2d Am. Compl. ¶ 12. That is somewhat vague. Somerville did not serve plaintiff with any paperwork or notice officially banning him from the premises. 2d Am. Compl. ¶ 13. So the complaint only barely supports the inference defendants ask the Court to draw, and at this stage, we are supposed to draw inferences in favor of the plaintiff.[6]

When plaintiff returned to the store, Somerville approached him as he was finishing a conversation with the manager about the incident. 2d Am. Compl. ¶ 15. It would be fair to infer that it was the Safeway manager who had control over which individuals were banned from the premises. And, as plaintiff argues in his opposition, Pl.'s Opp. to Safeway's Mot. at 7, an individual "lacks the requisite criminal intent for unlawful entry when a person enters a place with a good purpose and a bona fide belief in his or her right to enter." *Ortberg v. United States*, 81 A.3d 303, 308 (D.C. 2013), quoting *Darab v. United States*, 623 A.2d 127, 136 (D.C. 1993). Thus, the question becomes: would a reasonable officer believe, in the absence of a formal written

6 The Court acknowledges, though, that plaintiff's allegation that he "protested" Somerville's instruction could support an inference that plaintiff did understand himself to be barred at that time. 2d Am. Compl. ¶ 12.

barring order, and after seeing plaintiff speaking with the manager, that a customer complying with his second order to leave the premises was nonetheless violating the unlawful entry statute because he returned to the store? Drawing all inferences in plaintiff's favor, the Court is not yet persuaded that he would.[7]

Accordingly, the motion to dismiss is denied as to Counts IV and V.

**IV. Count VI will be dismissed because no criminal action was instituted against plaintiff.**

In Count VI, plaintiff sued Somerville, McCoy, Faith of Life, Protos, and Safeway for malicious prosecution. Safeway has moved to dismiss the claim because plaintiff does not allege that a criminal action was instituted against him. Safeway's Mot. at 13–14.

To state a claim for malicious prosecution, a plaintiff must allege "(1) [that] the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by the plaintiff as the result of the original action." *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009), quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980).

Plaintiff alleges that he was "no-papered" when he appeared before the District of Columbia Superior Court, *i.e.*, prosecutors chose not to file formal charges. Malicious prosecution, however,

> requires proof of the institution of a criminal action . . . [and a] criminal action is "instituted" upon the filing of an information or indictment; a mere arrest, not followed by the filing of an

---

7 Safeway's arguments are also inconsistent. In Count III, Safeway argues that Somerville was not its agent. Safeway's Mot. at 9–10. But its argument for probable cause requires the Court to accept that Somerville had the authority to issue an oral, binding order banning plaintiff from the premises without consulting an employee lawfully in charge of the property. Defendant cannot have it both ways: either Somerville and McCoy had the authority to institute the ban as Safeway's agent, or they did not, and plaintiff did not violate any official ban from the premises.

> information or the return of an indictment, cannot give rise to liability for malicious prosecution.

*Rogala*, 161 F.3d at 44. Because plaintiff's complaint does not allege that an action was instituted against him, he fails to allege a malicious prosecution claim.

Therefore, Count VI is dismissed.

## V. Count VII will be dismissed because plaintiff's allegations do not rise to "extreme and outrageous" conduct.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kotsch*, 924 A.2d at 1045 (internal quotation marks omitted). The court must determine that a reasonable jury could find the conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982), quoting Restatement (Second) of Torts § 46 cmt. d. This "very demanding standard" is "only infrequently met." *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997).

Count VII alleges Somerville and McCoy engaged in extreme and outrageous conduct by "assaulting, arresting, detaining, and falsely charging" plaintiff. 2d Am. Compl. ¶ 49. Safeway contends that the alleged conduct does not satisfy IIED's demanding standard, and the Court agrees. It cannot be said that the combination of the alleged assault, arrest, detention, and false charges constitutes extreme or outrageous conduct. While defendants appear to have been overeager and aggressive, plaintiff fails to allege facts to establish an IIED claim.

Accordingly, Count VII is dismissed.

## VI. Count VIII will be dismissed because plaintiff fails to allege any facts related to hiring, training, or supervision.

Both Safeway and Protos argue that plaintiff's negligent hiring and supervision claim should be dismissed because plaintiff fails to allege specific facts to support the claims. In response, plaintiff asserts that "[a] reasonable explanation for the conduct of Somerville and McCoy is that they were unqualified, untrained and poorly supervised." Pl.'s Opp. to Safeway's Mot. at 10; Pl.'s Opp. to Protos's Mot. at 7. That, however, is pure speculation and not a plausible inference from the alleged facts.

To invoke negligent hiring or supervision as a theory of liability, a party must "show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Katz v. District of Columbia*, 285 A.3d 1289, 1317 (D.C. 2022), quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985). Importantly, "a contractor's negligence in conducting the work it was hired to do creates no presumption that the employer was negligent in selecting the contractor. . . . One incident of poor judgment does not prove incompetence." *Fry v. Diamond Const., Inc.*, 659 A.2d 241, 248 (D.C. 1995).

Outside of the incident in question, the second amended complaint lacks any allegations regarding Safeway's or Protos's hiring, training, or supervision of Somerville and McCoy; nor are there any allegations of prior misconduct on the part of either officer being brought to the attention of Safeway or Protos. The allegations are, therefore, too conclusory to state a claim. *See Search v. Uber Techs., Inc.*, 128 F. Supp. 3d 222, 230 (D.D.C. 2015) (dismissing a negligent hiring, training, and supervision claim as too conclusory because the gravamen of plaintiff's complaint was that defendant's practices "*must* have been inadequate if they failed to uncover" that defendant was unqualified) (emphasis in original).

For these reasons, Count VIII is dismissed.

## VII. Count IX will be dismissed because plaintiff does not allege facts that Safeway acted unreasonably.

To support a claim of negligence under D.C. law, a plaintiff must establish "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009), quoting *Mixon v. Wash. Metro. Area Transit Auth.,* 959 A.2d 55, 58 (D.C. 2008). It is "well-settled that a business invitor has a duty of care to its patrons while they are on its premises." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 807 (D.C. 2011), quoting *Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (applying D.C. law). And "[i]n the District of Columbia the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care [for premises liability] is reasonable care . . . ." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014), quoting *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 866 (D.C. 2009).

Plaintiff was in the Safeway store when the incident occurred. 2d Am. Compl. ¶ 15. Accordingly, a special relationship exists that may give rise to a duty of care. Defendant Safeway argues that plaintiff fails to state a claim because he does not allege that Safeway created a dangerous condition or allowed one to continue without correction. Safeway's Mot. at 18–20. Plaintiff responds by arguing that Safeway violated its duty because the incident occurred in view of the store manager, who did not intervene. Pl.'s Opp. to Safeway's Mot. at 11.

To make out a prima facie case of liability predicated upon the existence of a dangerous condition, "it is necessary to show that the party against whom negligence is claimed had actual notice of the dangerous condition or that the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected." *Sullivan*

*v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015), quoting *Anderson v. Woodward & Lothrop*, 244 A.2d 918, 918–19 (D.C. 1968). And with respect to the conduct of third-party actors, plaintiff concedes that the standard requires that the owner "should have been aware and should have realized" the third parties were dangerous. Pl.'s Opp. to Safeway's Mot. at 11, citing *Novak*, 452 F.3d at 907.

Here, however, plaintiff does not allege any facts to establish that Safeway or Protos were on notice of any dangerous conditions prior to the incident alleged in the second amended complaint. Nor does the manager's failure to intervene itself establish a violation of Safeway's duty. The complaint describes a short sequence of events: plaintiff was concluding his conversation with the manager, Somerville ordered him to leave, and as he complied, he was thrown to the ground. 2d Am. Compl. ¶ 15. Even though the incident took place in view of the store manager, there would have been no reason to expect it would occur, and there was insufficient time to intervene. *See Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1383 (D.C. 1979) (holding that Safeway did not violate a "duty to warn" plaintiff of an attack by another customer because there was "no opportunity to warn" and the incident took place over a matter of seconds).

Accordingly, Count IX is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts I, II, and VI–IX will be dismissed. Defendants' motion to dismiss Count III–V will be denied.

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: September 30, 2026